**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| ANGELIQUE CAMP RAMSKOG and AIDAN COTTON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Case No. 6:26-cv-1788 |
| PARKS AUTOMOTIVE GROUP, INC., d/b/a PARKS TOYOTA OF DELAND, and GLOBAL LENDING SERVICES LLC, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____/ | | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Angelique Camp Ramskog and Aidan Cotton sue Defendants Parks Automotive Group, Inc., d/b/a Parks Toyota of DeLand, and Global Lending Services LLC, and allege as follows:

**I. NATURE OF THE ACTION**

1. Parks Toyota of DeLand advertised a 2022 Honda HR-V EX at $14,000.00 and equipped with the driver-assistance features Angelique Ramskog had told its salesman she required in order to drive safely, then sold her a vehicle that lacks that equipment at a cash price of $16,995.00, financed $19,640.11 rather than the $14,927.00 the parties had agreed, and did so after representing that the car was a one-owner personal-use vehicle when it had multiple prior owners and had been used as a rental.

2. When Plaintiffs invoked the arbitration provision Parks wrote into their contract, the American Arbitration Association declined on May 11, 2026 to administer the claim, or any other claim between Parks and its consumers, because Parks had failed to comply with the association's consumer arbitration policies before the filing.

## II. PARTIES

3. Plaintiff Angelique Camp Ramskog is an adult individual who resides in Fairhope, Baldwin County, Alabama, is a citizen of the State of Alabama, and has physical disabilities.

4. Plaintiff Aidan Cotton is an adult individual who resides in Fairhope, Baldwin County, Alabama, is a citizen of the State of Alabama, and signed the retail installment sale contract as co-buyer, on which he is jointly obligated.

5. Plaintiffs are consumers within the meaning of Fla. Stat. § 501.203(7), 16 C.F.R. § 433.1(b), 15 U.S.C. § 1602(i), 15 U.S.C. § 1681a(c), and 15 U.S.C. § 2301(3).

6. Defendant Parks Automotive Group, Inc., d/b/a Parks Toyota of DeLand, is a Florida corporation with its principal place of business at 1701 South Woodland Boulevard, DeLand, Volusia County, Florida 32720, is a citizen of the State of Florida, and may be served through its registered agent, Corporation Company of Orlando, 300 South Orange Avenue, Suite 1600, Orlando, Florida 32801.

7. Parks is a licensed motor vehicle dealer under Fla. Stat. § 320.27, is a dealer within the meaning of Fla. Stat. § 501.976, and is engaged in trade or commerce within the meaning of Fla. Stat. § 501.203(8).

8. Parks is also a seller within the meaning of 16 C.F.R. § 433.1(j), a creditor within the meaning of 15 U.S.C. § 1602(g) and 12 C.F.R. § 1026.2(a)(17), a supplier and warrantor within the meaning of 15 U.S.C. § 2301(4) and (5), and a person who uses consumer reports within the meaning of 15 U.S.C. § 1681b(f).

9. Defendant Global Lending Services LLC is a foreign limited liability company with its principal place of business in Greenville, South Carolina, and a lien and payment address of P.O. Box 970, Wilmington, Ohio 45177, and upon information and belief no member of it is a citizen of the State of Alabama.

10. Global Lending Services LLC is the assignee and present holder of the retail installment sale contract and the recorded first lienholder on the vehicle, and it is named solely in that capacity under 16 C.F.R. § 433.2 and the Federal Trade Commission Holder Notice contained in the contract.

### III. JURISDICTION AND VENUE

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims arising under the Truth in Lending Act, the Magnuson-Moss Warranty Act, and the Fair Credit Reporting Act, and supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining claims and over the joinder of Global

Lending Services LLC, because every claim arises from a single retail transaction and forms part of the same case or controversy.

12. This Court independently has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), because Plaintiffs are citizens of Alabama, Parks is a citizen of Florida, and no member of Global Lending Services LLC is a citizen of Alabama.

13. The amount in controversy exceeds $75,000, and the amount in controversy on all claims in this suit exceeds $50,000, each exclusive of interest and costs, because Plaintiffs seek rescission of an obligation whose disclosed Total Sale Price is $40,133.52, restitution of the down payment and all installment payments, actual damages measured by the purchase price of the vehicle, punitive damages recoverable under Fla. Stat. § 817.41(6), 15 U.S.C. § 1681n(a)(2), and Florida common law, and attorney's fees recoverable under Fla. Stat. §§ 501.2105 and 817.41(6), 15 U.S.C. § 1640(a)(3), 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 2310(d)(2).

14. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Parks resides in this District and substantially all of the events giving rise to Plaintiffs' claims occurred at its dealership in DeLand, Volusia County, Florida, and assignment to the Orlando Division is proper under Local Rules 1.04(a) and 1.04(b).

## IV. CONDITIONS PRECEDENT

15. All conditions precedent to this action have occurred, have been performed, or have been waived or excused.

16. On June 25, 2026, Plaintiffs served on Parks and on its registered agent a written statutory pre-suit demand under Fla. Stat. § 501.98, by United States Priority Mail under tracking number 9405 5301 0935 5397 9591 62 and by electronic mail, stating the identity of the consumers and the dealer, describing the vehicle and each unfair and deceptive act and practice, itemizing the damages claimed, stating the relief sought, and enclosing the transaction documents in Plaintiffs' possession. That demand was delivered on July 13, 2026, more than thirty days before the filing of this action, and Parks neither paid the amounts demanded, nor paid the surcharge under Fla. Stat. § 501.98(4)(a), nor notified Plaintiffs within thirty days that it contended the amounts demanded were unreasonable.

17. Plaintiffs communicated their revocation of acceptance to Parks orally on December 6, 2025 and repeatedly thereafter, and confirmed that revocation in writing by notice served June 25, 2026, together with written notice of breach under Fla. Stat. § 672.607(3)(a).

## V. PARKS'S ARBITRATION PROVISION AND ITS DEFAULT

18. The retail installment sale contract Parks presented to Plaintiffs contains an arbitration provision, printed under the heading "PLEASE REVIEW -

IMPORTANT - AFFECTS YOUR LEGAL RIGHTS," which warns in capital letters that "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL" and which contains a class-action waiver.

19. The provision designates an arbitral forum, stating that "[y]ou or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration," and it obligates Parks to pay "the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000."

20. On April 6, 2026, Plaintiffs filed a Demand for Arbitration with the American Arbitration Association under its Consumer Arbitration Rules, docketed as AAA Case No. 01-26-0001-6510, attached the contract, paid the consumer filing fee, and served the Demand on Parks's registered agent.

21. On May 11, 2026, the American Arbitration Association wrote to both parties and declined to administer the case, stating:

> "Before the filing of this arbitration, Parks Automotive Group, Inc. dba Parks Toyota of Deland failed to comply with the American Arbitration Association's (AAA) policies regarding consumer claims, set forth in the Consumer Due Process Protocol and the Consumer Arbitration Rules, including the Costs of Arbitration, and/or removed themselves from the Consumer Clause Registry … . Therefore, we must decline to administer this claim and any other claims between this business and its consumers at this time."

22. The association further advised that it had "administratively closed our file" and that "[a]ccording to R-10(b) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution."

23. The conduct on which the association based its decision occurred "[b]efore the filing of this arbitration," so that Parks had already disqualified itself from the forum its contract names at the moment it obtained Plaintiffs' signatures on that contract.

24. Consumer Arbitration Rule R-12 requires a business providing for arbitration under those rules to register its clause with the Consumer Clause Registry, to submit the clause for review against the Consumer Due Process Protocol, and to pay the applicable review and annual fees, and provides that where a business declines to pay the annual registry fee, "the business will be removed from the Registry" and "the AAA will decline to administer consumer arbitrations arising from that arbitration agreement." Parks alone controlled whether it satisfied those requirements, and Plaintiffs had no ability to register Parks's clause, to submit its dispute resolution plan, or to pay its fees.

25. Parks has never cured the barrier it created, and on May 29, 2026 its counsel wrote only that "[t]he AAA matter is being addressed." As of the filing of this Complaint, no arbitration is pending or available.

26. By failing to satisfy the requirements of the arbitral forum it selected, and by failing to remedy that failure once the association identified it, Parks acted inconsistently with any right to arbitrate and is in default of any such right under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. Independently, Consumer Arbitration Rule R-10(b) provides that where the association declines administration "the parties may choose to submit their dispute to the appropriate court," and Plaintiffs have done so.

## VI. FACTUAL ALLEGATIONS

### A. The equipment Ms. Ramskog required.

27. Because of her physical disabilities, Ms. Ramskog requires a vehicle equipped with a back-up camera, blind-spot monitoring, lane-departure assistance, keyless entry, and push-button start in order to operate it safely. These features were required for safe operation and were not optional preferences.

28. The vehicle was purchased for the express and disclosed purpose of providing safe primary transportation for Ms. Ramskog, and the retail installment sale contract designates its primary use as "Personal, family, or household," leaving the boxes for business and agricultural use unmarked.

### B. Parks's advertisements and the pre-qualification voucher.

29. Ms. Ramskog located the vehicle through Carzing, an online marketplace on which Parks posted its inventory. Parks's Carzing listing represented that the

2022 Honda HR-V EX was equipped with a back-up camera, blind-spot monitoring, lane-departure assistance, keyless entry, and push-button start.

30. Parks's listing on its own website made the same representations about the same vehicle, identified by VIN 3CZRU6H5XNM767626 and an odometer reading of 64,430 miles, and displayed an advertised price of $14,000.00. A further capture of that listing displays a price of $14,998.00 together with a prominently marketed package Parks calls "Parks Plus."

31. Neither listing disclosed that the advertised price was subject to a mandatory package charge, and upon information and belief the package disclaimer on Parks's website appears only in fine print several screens down, does not state that the package is required, and does not state a uniform price.

32. After Ms. Ramskog selected the vehicle, Carzing issued a pre-qualification voucher bearing voucher code 122795365 and an expiration date of January 5, 2026, which set out the agreed terms of sale: a vehicle price of $14,000.00, a down payment of $2,700.00, taxes and fees of $2,032.00, a net trade-in value of $0.00, a service warranty of $1,595.00, and an amount financed of $14,927.00, payable over a term of 48 months at an annual percentage rate of 15.09% in monthly payments of $416.00.

## C. Parks's salesman confirmed the equipment and the terms.

33. Before traveling to the dealership, Ms. Ramskog spoke with Parks's representative Kevin Jacome, who is identified as the salesperson on Parks's Buyer's Order, Agreement and Vehicle Information Form. She informed him of her disability-related need for the specified safety features and asked him to confirm that the vehicle in fact had them, and he assured her that it did.

34. Ms. Ramskog texted Mr. Jacome an image of the voucher, and he again confirmed the vehicle's availability on the terms it stated. In reliance on those representations, Plaintiffs drove from Fairhope, Alabama to Parks's dealership in DeLand, Florida, a trip of approximately 475 miles each way.

## D. The late-night signing.

35. Plaintiffs arrived at the dealership and waited several hours while Parks washed and detailed the vehicle and prepared paperwork. Parks represented to them that the vehicle had been in private use with a single prior owner.

36. Parks offered to arrange financing and Plaintiffs accepted, but at the time Plaintiffs took possession the financing had not been finalized and remained subject to additional conditions, and Parks afterward requested additional documentation from them, including proof of residence.

37. Parks allowed Plaintiffs to take possession of the vehicle before financing was finalized, creating a conditional or spot delivery transaction without disclosure

of the final terms, and Plaintiffs were not afforded a meaningful opportunity to review those terms before taking possession.

38. The dealership had closed for business when the final paperwork was signed at approximately 9:22 p.m. Eastern time. The electronic signature records show Ms. Ramskog's signature at 2:22:32 A.M. GMT on December 7, 2025, Mr. Cotton's at 2:23:04 A.M. GMT, and the countersignature of Parks's Finance Manager, Daniel Smith, at 2:23:27 A.M. GMT, which correspond to 9:22 and 9:23 p.m. Eastern time on December 6, 2025.

39. Plaintiffs never saw or drove the vehicle before signing the papers.

## E. The absent safety equipment.

40. Within minutes of leaving the dealership, Plaintiffs noticed dashboard warning lights and immediately contacted Mr. Jacome, who excused them as an effect of the weather. After arriving home, Ms. Ramskog discovered that the blind-spot monitoring did not function and contacted Mr. Jacome, who directed her to controls that do not exist on this vehicle.

41. The vehicle is not equipped with blind-spot monitoring.

42. Upon realizing that the vehicle lacked the required safety equipment, Plaintiffs immediately demanded that Parks rescind the sale or exchange the vehicle for one meeting Ms. Ramskog's disclosed needs. Plaintiffs communicated that

demand orally on December 6, 2025 and repeated it orally by telephone, by email, and in person on multiple occasions thereafter.

43. Parks ceased responding to Plaintiffs' calls and communications and, upon information and belief, did so until financing was finalized more than a week later.

## F. The withheld contract documents.

44. After the signing, Parks handed Plaintiffs a folder represented to contain their signed paperwork. The folder contained only a vehicle-history report, a tag receipt, and a deposit receipt, and it did not contain the Buyer's Order, the Retail Installment Sale Contract, or the federal Truth-in-Lending disclosures.

45. Plaintiffs repeatedly requested copies of the sales contract and financing documents by telephone, by email, and in person, and Parks ignored those requests, leaving Plaintiffs unaware of the true financing terms, including the total amount financed, the additional charges, and their payment obligations.

46. Ms. Ramskog traveled to the dealership in person to obtain copies of the paperwork and to again discuss exchanging the vehicle. Parks did not provide the paperwork, and a manager instead showed her a payoff quote reflecting an amount far in excess of what she had been told she was paying.

47. Parks told Ms. Ramskog that because the financing had closed she could not exchange the vehicle and could only trade it in, which was inconsistent with Parks's own documents, because the Buyer's Order contains a Seller's Right to

Cancel provision keyed to a forty-five day assignment window and the finance company had told Plaintiffs to bring the vehicle back. Upon information and belief, Parks's trade-in proposal was structured to allow it to retain the fees and charges already imposed on the first transaction while imposing a second set on a replacement vehicle.

48. Plaintiffs did not obtain copies of the purchase agreement, the finance contract, and the registration paperwork until approximately two months after the sale, and then only from the finance company rather than from Parks.

**G. The undisclosed package charge and the inflated terms.**

49. Parks's Buyer's Order states a Vehicle Purchase Price of $16,995.00 and lists Accessories as not applicable, although the vehicle price Parks advertised and quoted, and which Plaintiffs agreed to, was $14,000.00.

50. The difference of $2,995.00 is attributable to the "Parks Plus" package, which Parks told Ms. Ramskog was required on the sale of all vehicles. Parks did not itemize that package as a separate line on the Buyer's Order, on the retail installment sale contract, or on any other sale document, and instead included the $2,995.00 within the stated Vehicle Purchase Price, and the phrase "Parks Plus" appears nowhere in the transaction paperwork.

51. None of the items purportedly included in the package are present on the vehicle, and Parks also increased the service contract charge from the agreed $1,595.00 to $2,838.00, an increase of $1,243.00.

52. Parks's Buyer's Order states a Total Sale Price of $22,340.11 and a Balance Due on Delivery of $19,640.11, itemized as a Vehicle Purchase Price of $16,995.00, a Predelivery Service Charge of $999.00, an Electronic Registration Filing Fee of $139.95, Sales Tax of $634.69, County Tax of $50.00, Title, Registration, and License Fees of $400.00, a PTA Fee of $99.00, a Service Contract of $2,838.00, and Sales Tax on Ancillary Products of $184.47.

53. Rather than financing the agreed $14,927.00 over 48 months at 15.09% in payments of $416.00, the executed retail installment sale contract discloses an Amount Financed of $19,640.11, an Annual Percentage Rate of 23.81%, a Finance Charge of $17,793.41, a Total of Payments of $37,433.52, and a Total Sale Price of $40,133.52, payable in 72 monthly installments of $519.91 beginning January 20, 2026.

54. The undisclosed inflation of the cash price and of the service contract charge total $4,238.00 in charges to which Plaintiffs never agreed, before accounting for the finance charges imposed on those amounts at 23.81% interest.

## H. The undisclosed rental and multiple-owner history.

55. Parks represented to Plaintiffs that the vehicle was a one-owner, privately used vehicle. That representation was false, because the vehicle had multiple prior owners, reported as three owners in four years, and had previously been used as a rental vehicle.

56. The vehicle-history report Parks placed in Plaintiffs' folder reflects that ownership and rental history, and Plaintiffs did not see it until they arrived home after the sale had closed.

57. Parks's Buyer's Order provides check boxes for the dealer to disclose that the vehicle was previously titled, registered, or used as a short term rental, and Parks left that box unchecked while reciting that "[u]nless checked below, Seller has no knowledge of and makes no representation about the history of the vehicle." The same document separately bears the printed statement "THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASER."

58. The retail installment sale contract recites that "[y]ou agree that we advised you whether, based on seller's knowledge, the vehicle was titled, registered, or used as a taxicab, police vehicle, short term rental … ," and Parks did not so advise Plaintiffs. A vehicle's ownership and rental history bears directly on its value and desirability and is material to a reasonable consumer.

**I. Multiple inconsistent executed contracts for the same sale.**

59. Parks's file contains more than one executed Retail Installment Sale Contract for this single transaction, and those documents are not consistent with one another.

60. One executed version, on form LAW 553-FL-ARB-ea, states a cash price of $17,795.00 including $800.00 in sales tax, an Unpaid Balance of Cash Price of $15,095.00, Total Other Charges of $3,406.16, and a documentary stamp tax of $69.16, identifies the service contract provider as "USWC SERVICE CONTRACT," and states Total Predelivery Service Fees of $1,138.95 as a single figure without itemizing its components.

61. A second executed version, on form LAW 553-FL-ARB-eps, states a cash price of $17,679.69 including $684.69 in sales tax, an Unpaid Balance of Cash Price of $14,979.69, Total Other Charges of $3,521.47, no documentary stamp tax, and $184.47 in government taxes not included in the cash price, identifies the service contract provider as "AGWS SERVICE CONTRACT," and itemizes the same $1,138.95 in Predelivery Service Fees as a $999.00 Predelivery Service Charge and a $139.95 Electronic Registration Filing Fee.

62. The difference between the two stated cash prices, between the two stated sales tax figures, and between the two stated totals of other charges is $115.31 in

each instance, yet both versions bear the same electronic signatures and arrive at the identical Amount Financed of $19,640.11 and Total Sale Price of $40,133.52.

63. At least one of those documents does not accurately reflect the terms of the transaction, and Parks obtained Plaintiffs' signatures on contract documents that were incomplete, inaccurate, or both.

## J. The tax overcharge routed back to Parks.

64. Plaintiffs were overcharged approximately $300.00 in tax, tag, and title amounts, which were financed and on which Plaintiffs pay interest, and when Ms. Ramskog inquired at the tag office she was advised that the overage was directed to be returned to Parks rather than to Plaintiffs or to the lienholder, so that Parks retained the overage while Plaintiffs continue to pay it, with interest.

## K. The failure to timely title and register.

65. Parks used a third-party tag agency and failed to timely submit the title and registration paperwork, and the temporary tag issued at the time of sale expired before proper registration paperwork was transmitted, because Parks did not deliver the paperwork to its tag agency until more than a month after the sale.

66. Plaintiffs requested a replacement temporary tag before expiration, Parks ignored the request, and Plaintiffs were forced to contact the Florida Department of Highway Safety and Motor Vehicles directly to obtain a valid temporary tag and to avoid operating the vehicle unlawfully. Parks's delay caused Plaintiffs

inconvenience, exposed them to the risk of operating an unregistered vehicle, and imposed an additional administrative burden on them.

**L. Delay.**

67. The delays described above form a pattern running through every stage of this transaction, and each one operated to Parks's advantage and to Plaintiffs' detriment.

68. On April 20, 2026, Parks's counsel wrote that "[t]he dealership is willing to consider unwinding the transaction" and asked Plaintiffs to "verify mileage and vehicle condition," and on April 23, 2026 Plaintiffs' counsel verified that the vehicle was in the same condition as at the sale and that the mileage was 75,061.

69. On May 29, 2026, Parks's counsel wrote that "[t]he Dealership will repurchase the vehicle, less a mileage charge for your clients usage," and then that "[t]hey would buy it back at her purchase price" and "I will get you the exact amount," but Parks never provided the exact amount, and when Plaintiffs' counsel asked on June 2, 2026 whether Parks intended to quantify its offer "or should we just move forward with litigation," Parks did not quantify it.

70. Interest has accrued throughout on an Amount Financed of $19,640.11 at 23.81% per annum while Plaintiffs made monthly payments of $519.91, and the odometer read 64,598 miles at the sale on December 6, 2025 and 75,061 miles by

April 23, 2026, an increase of 10,463 miles accumulated because Ms. Ramskog had no alternative transportation and Parks refused to unwind the sale.

71. Parks framed its own proposed remedy as a repurchase "less a mileage charge for your clients usage," so that the value of that remedy to Plaintiffs shrank with every mile they were required to drive while Parks delayed.

## M. Assignment and the Holder Notice.

72. On December 6, 2025, Parks assigned the retail installment sale contract to Global Lending Services LLC, and the assignment page states that "[s]eller assigns its interest in this contract to Global Lending Services LLC (Assignee) under the terms of Seller's agreement(s) with Assignee," marked in Parks's deal jacket as made without recourse.

73. Global Lending Services LLC is recorded as first lienholder on the Alabama Application for Certificate of Title with a lien date of December 6, 2025, Plaintiffs have made payments to it, and it quoted a payoff amount of $20,538.02 on or about June 2, 2026.

## N. Damages.

74. The vehicle as delivered cannot serve the express and disclosed purpose for which it was purchased, namely safe primary transportation for Ms. Ramskog, and the cash purchase price of the vehicle, being the amount financed plus the down payment, was $22,340.11.

75. Plaintiffs paid a $2,700.00 down payment, have made monthly payments of $519.91, and have suffered actual damages in an amount to be determined at trial.

76. Plaintiffs have suffered incidental, consequential, and special damages, including lost wages from time missed from work, out-of-pocket expenses, transportation-related costs, the cost of obtaining a valid temporary tag, loss of use of the vehicle, and loss of the benefit of the bargain, and they continue to incur damages as finance charges accrue at 23.81% per annum and the vehicle depreciates.

77. The full measure of Plaintiffs' damages is not presently ascertainable and will be established through discovery and proof at trial, and Plaintiffs seek every category of damages and relief recoverable under each claim pleaded, including actual, compensatory, incidental, consequential, special, exemplary, punitive, statutory, and nominal damages, together with restitution, disgorgement, rescissory relief, declaratory and injunctive relief, attorney's fees, costs, and interest.

## O. Parks's unauthorized use of Plaintiffs' consumer reports.

78. Plaintiffs authorized Parks to obtain their consumer reports for the single, limited purpose of arranging financing for the December 6, 2025 purchase, and that financing was finalized and the contract assigned to Global Lending Services LLC in December 2025.

79. After that transaction closed, Parks continued to submit Plaintiffs' credit applications to multiple finance companies from December 2025 through February 2026, without authorization and for vehicles Plaintiffs had not agreed to purchase.

80. Parks had no permissible purpose under 15 U.S.C. § 1681b for obtaining or using Plaintiffs' consumer reports after the December 2025 financing was finalized, and it obtained or caused to be obtained numerous consumer reports concerning Plaintiffs during that period, each of which generated a hard inquiry.

81. Ms. Ramskog continued to receive letters from finance companies stating that Parks had submitted credit applications on various vehicles on dates ranging from December 2025 through February 2026, she has more than fifty hard inquiries on her consumer reports as a result, and Plaintiffs learned of the unauthorized inquiries from those letters and from their own consumer reports.

## VII. THE HOLDER NOTICE AND THE LIABILITY OF THE ASSIGNEE

82. The retail installment sale contract is a consumer credit contract within the meaning of 16 C.F.R. § 433.1(i), and it contains on its face the Holder Notice that 16 C.F.R. § 433.2(a) requires a seller to include, which provides that "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF."

83. That Notice is a term of the contract that travels with the paper and abrogates holder in due course status, so that the assignee who buys a dealer's paper takes the dealer's legal position along with the dealer's revenue stream.

84. Global Lending Services LLC is a holder within the meaning of the Notice, because Parks assigned the contract to it, it accepted the assignment, it is the recorded lienholder, and it collects Plaintiffs' monthly payments. It is therefore subject to every claim and defense Plaintiffs could assert against Parks arising out of the sale, its liability is wholly derivative, and Plaintiffs allege no independent wrongdoing by it.

85. Complete relief requires cancellation of the debt and release of the lien, so that the holder is a party in whose absence the Court could not accord complete relief among the existing parties within the meaning of Fed. R. Civ. P. 19(a)(1)(A). Plaintiffs plead their claims against the holder consistent with the second sentence of the Holder Notice, which provides that "[r]ecovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

## VIII. FDUTPA: GENERAL VIOLATIONS AND PER SE VIOLATIONS

86. Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The elements of a claim for damages are a deceptive act or unfair practice, causation, and actual damages, while

a claim for declaratory or injunctive relief under Fla. Stat. § 501.211(1) is available to anyone aggrieved by a violation.

87. A defendant may violate the Act in either of two ways, and Plaintiffs plead both. The first is a general violation, consisting of an act or practice that is itself unfair, unconscionable, or deceptive under Fla. Stat. § 501.204(1), measured objectively by whether the practice is likely to mislead a consumer acting reasonably in the circumstances or whether it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and requiring no proof of intent, reliance, or scienter and no violation of any other statute.

88. The second is a per se violation, consisting of a violation of a separate law that itself proscribes unfair, deceptive, or unconscionable acts or practices, which Fla. Stat. § 501.203(3) defines to include any rule promulgated pursuant to the Federal Trade Commission Act, the standards of unfairness and deception set forth by the Federal Trade Commission or the federal courts, and "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Count I is pleaded as a general violation and Count II as a per se violation.

89. The Act does not displace any other remedy available to Plaintiffs, because Fla. Stat. § 501.213(1) provides that "[t]he remedies of this part are in addition to remedies otherwise available for the same conduct under state or local law."

Plaintiffs are entitled to elect their remedies at or before the entry of judgment, do not seek a double recovery for the same element of loss, and do not seek, under any claim arising under Florida law, any recovery for the reporting of information to consumer reporting agencies.

## COUNT I
**Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 through 501.213: General Unfair and Deceptive Acts and Practices**
**(Against Parks Automotive Group, Inc., and against Global Lending Services LLC as holder)**

90. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 27 through 77, paragraphs 82 through 85, and paragraphs 86 through 89 as if fully set forth herein.

91. Parks engaged in trade or commerce within the meaning of Fla. Stat. § 501.203(8) by advertising, offering for sale, selling, and financing motor vehicles to consumers in Florida, and it committed unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of that trade or commerce, in violation of Fla. Stat. § 501.204(1), by the following conduct.

(a)    Representing, in its advertising and through its representative, that the vehicle was equipped with a back-up camera, blind-spot monitoring, lane-departure assistance, keyless entry, and push-button start, when

the vehicle lacks that equipment, to a consumer who had disclosed that those features were required for safe operation.

(b)     Representing that the vehicle was a one-owner, privately used vehicle when it had multiple prior owners and had been used as a rental, and leaving the short term rental disclosure box on its own Buyer's Order unchecked.

(c)     Increasing the advertised and agreed $14,000.00 cash price to $16,995.00 by adding an undisclosed, non-itemized package charge of $2,995.00 that Parks falsely represented to be mandatory, and charging Plaintiffs that amount for a package none of whose items are present on the vehicle.

(d)     Increasing the agreed $1,595.00 service contract charge to $2,838.00 without disclosure or agreement.

(e)     Financing $19,640.11 rather than the agreed $14,927.00, at 23.81% over 72 months rather than the 15.09% over 48 months reflected in the parties' agreed terms, producing a Total Sale Price of $40,133.52.

(f)     Conducting the closing after business hours, at approximately 9:22 p.m., after Plaintiffs had traveled approximately 475 miles and waited several hours, without permitting them to see or drive the vehicle before signing, and delivering the vehicle on a conditional or spot delivery

basis before financing was finalized and without disclosing the final terms.

(g)     Handing Plaintiffs a folder represented to contain their signed documents that contained none of the operative contracts or disclosures, and then ignoring approximately two months of telephone, email, and in-person requests for those documents.

(h)     Telling Ms. Ramskog that the completion of financing precluded any exchange or unwinding of the sale, when Parks's own documents provided otherwise, and structuring a proposed trade-in so as to retain the fees and charges of the first transaction while imposing a second set on a replacement vehicle.

(i)     Generating and maintaining two materially different executed versions of the same retail installment sale contract, with inconsistent cash prices, inconsistent sales tax figures, inconsistent itemizations of predelivery fees, and different named service contract providers.

(j)     Financing an approximately $300.00 tax, tag, and title overcharge on which Plaintiffs pay interest, and structuring the transaction so that the overage was returned to Parks rather than credited to Plaintiffs or applied to reduce principal.

(k)   Failing to timely submit title and registration paperwork, allowing Plaintiffs' temporary tag to expire, and ignoring their requests for a replacement tag.

(l)   Imposing a mandatory, class-barring arbitration provision and obtaining Plaintiffs' agreement to it as a condition of the sale, and then declining to satisfy the prerequisites necessary for the designated forum to hear their claims.

92. Each of the foregoing acts and practices was likely to mislead a consumer acting reasonably under the circumstances, and did mislead Plaintiffs. Parks's conduct was unfair within the meaning of Fla. Stat. § 501.204(1) because it caused substantial injury that Plaintiffs could not reasonably have avoided and that is not outweighed by any countervailing benefit to consumers or to competition.

93. Parks's conduct was unconscionable, because Parks used a disclosed disability-related requirement, a travel commitment of approximately 475 miles, and an after-hours closing to obtain Plaintiffs' signatures on terms materially different from those it had advertised and quoted, and then withheld the documents that would have revealed the difference.

94. Parks's violations directly and proximately caused Plaintiffs actual damages. The measure of actual damages under the Act is the difference between

the value of the vehicle as represented and its value as delivered, or, where the vehicle as delivered is worthless to the consumer, the purchase price.

95. The vehicle as delivered is worthless to Plaintiffs, because it was purchased for the express and disclosed purpose of providing safe primary transportation for Ms. Ramskog and cannot serve that purpose without the represented equipment. Plaintiffs' actual damages accordingly include the purchase price of the vehicle and, in the alternative, the undisclosed package charge, the increase in the service contract charge, the tax and fee overcharge, and the finance charges imposed on each of those amounts, in amounts to be determined at trial, together with incidental, consequential, and special damages.

96. Global Lending Services LLC is subject to this claim as holder, and Plaintiffs' affirmative recovery against it is limited to amounts paid under the contract.

WHEREFORE, Plaintiffs demand judgment against Defendants for actual, compensatory, incidental, consequential, and special damages in amounts to be determined at trial, declaratory and injunctive relief under Fla. Stat. § 501.211(1), rescission and restitution of all payments, the down payment, and all fees and charges paid, disgorgement of all amounts by which Defendants have been unjustly enriched, attorney's fees and costs under Fla. Stat. § 501.2105, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just.

## COUNT II
### Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 through 501.213: Per Se Violations
### (Against Parks Automotive Group, Inc., and against Global Lending Services LLC as holder)

97. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 27 through 77, paragraphs 82 through 85, and paragraphs 86 through 89 as if fully set forth herein.

98. Parks violated the statutes and regulations set out below, each of which proscribes unfair, deceptive, or unconscionable acts or practices, and each violation is a per se violation of the Act under Fla. Stat. § 501.203(3).

**1. Advertised price omitting mandatory charges, Fla. Stat. § 501.976(16).**

99. Fla. Stat. § 501.976(16) makes it an unfair and deceptive trade practice for a motor vehicle dealer to advertise the price of a vehicle without including all fees or charges that the customer must pay, excluding only state and local taxes, tags, registration fees, and title fees.

100. Parks advertised the vehicle at a cash price of $14,000.00 and then, at contracting, added a mandatory "Parks Plus" package that inflated the cash price to $16,995.00, an increase of $2,995.00, without itemizing the charge and while placing the package disclaimer several screens down on its website in fine print.

101. The Florida Attorney General has advised motor vehicle dealers that a failure to comply with Fla. Stat. § 501.976(16) is specifically identified as an unfair

Page 29 of 60

and deceptive trade practice in violation of the Act, that omitting dealer-added accessories from the advertised price is itself a deceptive practice, and that advertisements requiring the consumer to pay for advantage or hard-add packages already installed on the advertised vehicle, or requiring the consumer to navigate to a separate page to learn of additional charges, are violative.

### 2. False and misleading advertising, Fla. Stat. §§ 817.41 and 817.06.

102. Parks disseminated advertisements representing that the vehicle was equipped with a back-up camera, blind-spot monitoring, lane-departure assistance, keyless entry, and push-button start, and representing an advertised price that Parks did not honor, in violation of Fla. Stat. §§ 817.41(1) and 817.06(1).

### 3. Federal Trade Commission standards, Section 5(a)(1) of the Federal Trade Commission Act.

103. Parks's conduct violated the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission and the federal courts under Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and is a per se violation under Fla. Stat. § 501.203(3)(b).

104. On March 13, 2026, the Federal Trade Commission issued warning letters to ninety-seven automobile dealership groups advising that the price a dealer advertises must be the total price, including all mandatory fees, that the consumer will be required to pay, and identifying as examples of illegal pricing practices

"advertising a price that does not reflect all required fees," "conditioning the advertised price on consumers using dealer financing," and "requiring consumers to buy additional items not reflected in the advertised price." Parks advertised $14,000.00 while requiring Plaintiffs to pay for a mandatory package not reflected in the advertised price, and conditioned the transaction on dealer financing.

### 4. Truth in Lending Act and Regulation Z, 15 U.S.C. § 1638 and 12 C.F.R. § 1026.17.

105. Parks failed to deliver the Truth in Lending Act disclosures to Plaintiffs in a written form they could keep, before consummation, in violation of 15 U.S.C. § 1638(a) and (b)(1) and 12 C.F.R. § 1026.17(a)(1) and (b).

### 5. Motor Vehicle Retail Sales Finance Act, Fla. Stat. §§ 520.04 and 520.07.

106. Fla. Stat. § 520.07(1) requires the seller under a retail installment contract to deliver to the buyer a legible copy of the contract signed by the seller and containing all of the disclosures the chapter requires.

107. Parks violated that requirement by failing to deliver a copy of the executed Retail Installment Sale Contract to Plaintiffs at the time of sale and by withholding the document for approximately two months, and it further violated Fla. Stat. §§ 520.04 and 520.07 because the contract it ultimately produced reflected an inflated cash price and service contract charge that did not match the agreed and represented terms and incorporated an undisclosed package charge.

108. Each of the foregoing violations independently constitutes a per se violation of the Act, any one of them is sufficient to establish liability, and each directly and proximately caused Plaintiffs actual damages as alleged above.

109. Global Lending Services LLC is subject to this claim as holder, and Plaintiffs' affirmative recovery against it is limited to amounts paid under the contract.

WHEREFORE, Plaintiffs demand judgment against Defendants for actual, compensatory, incidental, consequential, and special damages in amounts to be determined at trial, declaratory and injunctive relief under Fla. Stat. § 501.211(1), rescission and restitution of all payments, the down payment, and all fees and charges paid, disgorgement of all amounts by which Defendants have been unjustly enriched, attorney's fees and costs under Fla. Stat. § 501.2105, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just.

### COUNT III
**Misleading Advertising, Fla. Stat. § 817.41**
**(Against Parks Automotive Group, Inc., and against Global Lending Services LLC as holder)**

110. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 27 through 77, and paragraphs 82 through 85 as if fully set forth herein.

111. Fla. Stat. § 817.41(1) provides that "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public

of the state, or any portion thereof, any misleading advertisement," and declares such dissemination "to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

112. Parks made and disseminated before the general public of this state advertisements for the vehicle, on the Carzing marketplace and on its own website, representing that the vehicle was equipped with a back-up camera, blind-spot monitoring, lane-departure assistance, keyless entry, and push-button start. Those representations were untrue, because the vehicle is not equipped with blind-spot monitoring.

113. Parks also advertised the vehicle at $14,000.00, a price it did not honor and which omitted a package charge Parks told Plaintiffs was mandatory on every vehicle it sells, and an advertised price that excludes a charge the dealer treats as non-optional is misleading.

114. Parks knew or should have known that these representations were false when made, because the equipment on a vehicle in a dealer's own inventory is within the dealer's knowledge and ascertainable by inspection, and Parks had physical possession of the vehicle and washed and detailed it on the day of sale. Parks disseminated the advertisements with the intent to induce consumers, including Plaintiffs, to purchase the vehicle.

115. Plaintiffs relied on these representations, and Ms. Ramskog asked Parks's representative to confirm the very representations at issue before she traveled to the dealership. Plaintiffs suffered damages as a proximate result, in that they traveled approximately 475 miles each way to purchase a vehicle that cannot serve the disclosed purpose for which it was bought and became bound to a 72-month obligation at 23.81% interest.

116. Fla. Stat. § 817.41(6) provides that "[a]ny person prevailing in a civil action for violation of this section shall be awarded costs, including reasonable attorney's fees, and may be awarded punitive damages in addition to actual damages proven."

117. Global Lending Services LLC is subject to this claim as holder, and Plaintiffs' affirmative recovery against it is limited to amounts paid under the contract.

WHEREFORE, Plaintiffs demand judgment against Defendants for actual, compensatory, incidental, consequential, and special damages in amounts to be determined at trial, punitive and exemplary damages under Fla. Stat. § 817.41(6), costs and reasonable attorney's fees under Fla. Stat. § 817.41(6), rescission and restitution, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just.

## COUNT IV
### Violation of the Florida Deceptive and Unfair Trade Practices Act: Declaratory and Injunctive Relief Under Fla. Stat. § 501.211(1) Regarding Parks's
### Use of an Arbitration Provision It Has Made Unavailable
### (Against Parks Automotive Group, Inc.)

118. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 18 through 26, and paragraphs 86 through 89 as if fully set forth herein.

119. Fla. Stat. § 501.211(1) provides that "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part," and Plaintiffs are aggrieved by a violation of the Act.

120. Parks presents to consumers, and obtains consumer signatures on, a retail installment sale contract containing a mandatory arbitration provision and class-action waiver that warns in capital letters that the consumer may be required to resolve any dispute "BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." At the time Parks obtained Plaintiffs' signatures on that provision, it had already failed to comply with the association's policies governing consumer claims, or had removed itself from the Consumer Clause Registry, or both, with the consequence that the association would decline to administer any consumer claim arising from Parks's arbitration agreement.

121. Parks did not disclose that fact, so that a consumer signing its contract is told in capital letters that arbitration may be substituted for court but is not told that the designated forum will refuse the case. An arbitration provision that a seller has rendered inoperative, presented to consumers as though it were operative, is a deceptive act or practice within the meaning of Fla. Stat. § 501.204(1), because it misrepresents the nature and availability of the forum in which the consumer's rights will be determined, on a subject material to any reasonable consumer.

122. The practice is also unfair and unconscionable within the meaning of Fla. Stat. § 501.204(1), because it causes substantial injury to consumers who abandon claims on being told they cannot sue, to consumers who pay filing fees to a forum that will not hear them, and to consumers who lose months of time and accrue interest and depreciation while the futility of the designated forum is discovered; because consumers cannot reasonably avoid that injury, compliance with the association's registry and protocol requirements being exclusively within Parks's control and undisclosed at the point of sale; and because it secures for Parks the deterrent value of an arbitration clause while imposing none of the corresponding obligation to provide a forum.

123. Parks's conduct is continuing, and upon information and belief Parks continues to use this arbitration provision in its consumer contracts while remaining out of compliance with the requirements of the arbitral forum the provision

designates. Absent declaratory and injunctive relief, Parks will continue to invoke and threaten to invoke this provision against Plaintiffs and other consumers, although no arbitration is available.

124. Plaintiffs face a real and immediate threat of continuing injury from the practice, an actual and justiciable controversy exists between Plaintiffs and Parks concerning the enforceability of the arbitration provision and the lawfulness of Parks's use of it, and Plaintiffs seek the following relief under Fla. Stat. § 501.211(1) and, as to declaratory relief, 28 U.S.C. §§ 2201 and 2202.

    (a)    A declaratory judgment that Parks's practice of presenting, obtaining signatures on, and invoking an arbitration provision while failing to satisfy the requirements of the arbitral forum that provision designates violates Fla. Stat. § 501.204(1).

    (b)    A declaratory judgment that Parks has defaulted on and waived any right to arbitrate the claims asserted in this action, under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, and under Consumer Arbitration Rule R-10(b), and that the arbitration provision is unenforceable as to Plaintiffs.

    (c)    An injunction restraining Parks from invoking, enforcing, or threatening to enforce the arbitration provision against Plaintiffs in this or any other proceeding.

(d)    An injunction restraining Parks from presenting to consumers, obtaining consumer signatures on, or invoking against consumers any arbitration provision designating an arbitral forum whose requirements Parks has not satisfied, unless and until Parks demonstrates compliance with the requirements of that forum, including registration on the Consumer Clause Registry and payment of all applicable review and annual fees.

(e)    An injunction requiring Parks to disclose, in writing and conspicuously, at or before the time it presents an arbitration provision to a consumer for signature, whether it is then in compliance with the requirements of each arbitral forum the provision designates.

WHEREFORE, Plaintiffs demand entry of a declaratory judgment and permanent injunctive relief as set forth above, attorney's fees and costs under Fla. Stat. § 501.2105, and such other and further relief as the Court deems just.

**COUNT V**
**Fraud in the Inducement**
**(Against Parks Automotive Group, Inc., and against Global Lending Services LLC as holder)**

125. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 27 through 77, and paragraphs 82 through 85 as if fully set forth herein.

126. Parks made the following false statements of material fact to Plaintiffs.

(a) That the vehicle was equipped with a back-up camera, blind-spot monitoring, lane-departure assistance, keyless entry, and push-button start, made by Kevin Jacome by telephone before Plaintiffs traveled to the dealership, in direct response to Ms. Ramskog's request that he confirm those features, and made in Parks's Carzing and website advertisements.

(b) That the vehicle was a one-owner, privately used vehicle, made at the dealership on December 6, 2025.

(c) That the vehicle was available on the terms stated in the pre-qualification voucher, including a vehicle price of $14,000.00 and a service warranty of $1,595.00, confirmed by Mr. Jacome after Ms. Ramskog texted him an image of the voucher.

(d) That the "Parks Plus" package was required on the sale of all vehicles.

(e) That the folder Parks handed Plaintiffs at the close of the transaction contained Plaintiffs' copies of the documents they had signed.

(f) That, because financing had closed, Ms. Ramskog could not exchange the vehicle and could only trade it in.

127. Each of those statements was false when made, and Parks knew each was false or made it with reckless disregard for its truth or falsity, because the equipment on a vehicle in Parks's own inventory, the vehicle's ownership and rental history,

the contents of a folder Parks assembled, the composition of Parks's own package program, and the terms of Parks's own cancellation provisions were all matters within Parks's knowledge.

128. Parks made each statement with the intent that Plaintiffs rely on it, to induce Plaintiffs to travel approximately 475 miles to the dealership, to induce them to sign the sale and financing documents, and, after the sale, to induce them to abandon their demand for rescission. Plaintiffs justifiably relied on each statement, and Ms. Ramskog's reliance was reasonable because she disclosed her disability-related requirement, identified the specific features she needed, and asked Parks to confirm them before she committed to the trip.

129. Parks also concealed material facts it had a duty to disclose, including the vehicle's ownership and rental history, the existence and amount of the $2,995.00 charge included within the cash price, the increase in the service contract charge, and the conditional nature of the delivery.

130. As a direct and proximate result of Parks's misrepresentations and concealment, Plaintiffs suffered damages including the purchase price of the vehicle, the inability of the vehicle to serve the disclosed purpose for which it was bought, their obligation on a contract for a substantially greater amount than the parties agreed, and lost wages, out-of-pocket expenses, and transportation-related costs.

131. Parks's conduct was intentional, willful, wanton, and in reckless disregard of Plaintiffs' rights, and was directed at a consumer Parks knew to be relying on its representations for her physical safety, so that punitive damages are warranted.

132. Global Lending Services LLC is subject to this claim as holder, and Plaintiffs' affirmative recovery against it is limited to amounts paid under the contract.

WHEREFORE, Plaintiffs demand judgment against Defendants for rescission of the contract, including return of the vehicle and refund of all payments, the down payment, and all fees and charges paid, together with actual, compensatory, incidental, consequential, and special damages in amounts to be determined at trial, punitive and exemplary damages in such amount as the trier of fact may award, disgorgement, pre-judgment and post-judgment interest, costs, and such other and further relief as the Court deems just.

**COUNT VI**
**Negligent Misrepresentation**
**Pleaded in the Alternative to Count V**
**(Against Parks Automotive Group, Inc., and against Global Lending Services LLC as holder)**

133. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 27 through 77, and paragraphs 82 through 85 as if fully set forth herein.

134. Parks represented that the vehicle was equipped with a back-up camera, blind-spot monitoring, lane-departure assistance, keyless entry, and push-button start, that the vehicle was a one-owner privately used vehicle, and that the vehicle was available on the terms stated in the pre-qualification voucher, and each of those representations was false.

135. Parks was negligent in making each representation, because it knew or should have known that the representation was false and had the means and the obligation to determine the truth, having physical possession of the vehicle, access to its ownership and rental history, control of the sale documents, and control of the contents of the folder it handed to Plaintiffs.

136. Parks intended to induce Plaintiffs to rely on the representations, and Plaintiffs acted in justifiable reliance on them, to their detriment.

137. As a direct and proximate result, Plaintiffs suffered actual damages, in that the vehicle cannot serve the disclosed purpose for which it was purchased and Plaintiffs are bound to a contract for a substantially greater amount than the parties agreed, and Ms. Ramskog has missed time from work to address this transaction and has suffered lost wages, out-of-pocket expenses, and transportation-related costs.

138. Global Lending Services LLC is subject to this claim as holder, and Plaintiffs' affirmative recovery against it is limited to amounts paid under the contract.

WHEREFORE, Plaintiffs demand judgment against Defendants for rescission of the contract, including return of the vehicle and refund of all payments, the down payment, and all fees and charges paid, together with actual, compensatory, incidental, consequential, and special damages in amounts to be determined at trial, disgorgement, pre-judgment and post-judgment interest, costs, and such other and further relief as the Court deems just.

**<u>COUNT VII</u>**
**Violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq.,**
**and Regulation Z, 12 C.F.R. Part 1026**
**(Against Parks Automotive Group, Inc.)**

139. Plaintiffs reallege and incorporate paragraphs 3 through 10 and paragraphs 27 through 77 as if fully set forth herein.

140. The transaction was a consumer credit transaction, in that credit was extended to natural persons primarily for personal, family, or household purposes, subject to a finance charge, and payable in more than four installments, and Parks is a creditor within the meaning of 15 U.S.C. § 1602(g) and 12 C.F.R. § 1026.2(a)(17) because the contract names Parks Toyota of DeLand as the Seller-Creditor, the debt was initially payable on its face to Parks, and Parks regularly extends consumer credit payable in more than four installments.

141. Under 15 U.S.C. § 1638(b)(1) and 12 C.F.R. § 1026.17(a)(1) and (b), the required disclosures must be made clearly and conspicuously in writing, in a form

the consumer may keep, and before consummation of the transaction, and the creditor must furnish them to the consumer, delivery not being satisfied by retaining them at the dealership or transmitting them only to a third-party finance company.

142. Parks failed to deliver to Plaintiffs, at or before consummation, any copy of the retail installment sale contract or the disclosures it contains in a form Plaintiffs could keep, handing them instead a folder containing only a vehicle-history report, a tag receipt, and a deposit receipt, and it then ignored approximately two months of telephone calls, emails, and in-person requests for the documents, so that Plaintiffs obtained the contract from the finance company rather than from Parks.

143. Parks's own contract states that "NOTICE TO THE BUYER: … b) You are entitled to an exact copy of the contract you sign," and it contains a preprinted recital that Plaintiffs "confirm that you received a completely filled-in copy when you signed it," a recital that was false when made and on which Parks obtained Plaintiffs' signatures.

144. Parks violated 15 U.S.C. § 1638(a) and 12 C.F.R. § 1026.18 by failing to make accurate disclosures, in that two materially different executed versions of the same contract exist bearing different cash prices of $17,795.00 and $17,679.69, different sales tax figures of $800.00 and $684.69, different documentary stamp tax figures of $69.16 and none, and different named service contract providers, and it violated 12 C.F.R. § 1026.18(c) by providing a written itemization of the amount

financed that misidentified the amounts and the persons to whom amounts were paid on Plaintiffs' behalf and by including a $2,995.00 charge within the stated cash price rather than disclosing it.

145. Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1640(a)(2)(A)(i), actual damages under 15 U.S.C. § 1640(a)(1), and costs and reasonable attorney's fees under 15 U.S.C. § 1640(a)(3), and this action is timely under 15 U.S.C. § 1640(e) because the violations occurred on December 6, 2025.

WHEREFORE, Plaintiffs demand judgment against Parks for statutory damages in the maximum amount permitted by law, actual damages in an amount to be determined at trial, costs and reasonable attorney's fees under 15 U.S.C. § 1640, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just.

## COUNT VIII
**Breach of the Implied Warranty of Fitness for a Particular Purpose,
Fla. Stat. § 672.315, Enforced Under the Magnuson-Moss Warranty Act,
15 U.S.C. § 2310(d)
(Against Parks Automotive Group, Inc., and against Global Lending Services
LLC as holder)**

146. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 27 through 77, and paragraphs 82 through 85 as if fully set forth herein.

147. The vehicle is a consumer product within the meaning of 15 U.S.C. § 2301(1) and a good within the meaning of Fla. Stat. § 672.105, and Parks is a

merchant with respect to goods of that kind within the meaning of Fla. Stat. § 672.104.

148. Fla. Stat. § 672.315 provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

149. At the time of contracting, Parks knew the particular purpose for which the vehicle was required, because Ms. Ramskog told its representative that she required a back-up camera, blind-spot monitoring, lane-departure assistance, keyless entry, and push-button start in order to operate the vehicle safely given her disabilities, and she relied on Parks's skill and judgment to furnish a suitable vehicle, asking its representative to confirm that the vehicle had the required features rather than inspecting it herself and never seeing or driving the vehicle before signing.

150. An implied warranty of fitness for that particular purpose arose under Fla. Stat. § 672.315 and constitutes an implied warranty within the meaning of 15 U.S.C. § 2301(7).

151. The warranty was not excluded or modified, because the disclaimer in the retail installment sale contract applies only "[u]nless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this

contract," and Parks entered into a service contract with Plaintiffs on the date of the contract, charging $2,838.00 for it and financing it as part of the Amount Financed. The disclaimer is separately ineffective under 15 U.S.C. § 2308(a)(2), which prohibits a supplier from disclaiming any implied warranty where it enters into a service contract with the consumer at the time of sale or within 90 days thereafter, and 15 U.S.C. § 2308(c), which provides that a disclaimer made in violation of that section "shall be ineffective for purposes of this chapter and State law."

152. Parks breached the implied warranty of fitness, because the vehicle is not equipped with blind-spot monitoring and is not fit for the particular purpose Ms. Ramskog disclosed. Plaintiffs afforded Parks a reasonable opportunity to cure within the meaning of 15 U.S.C. § 2310(e), by demanding within minutes of leaving the dealership that Parks rescind the sale or exchange the vehicle and by repeating that demand, and Parks refused; and Plaintiffs gave timely notice of the breach under Fla. Stat. § 672.607(3)(a).

153. A consumer damaged by a supplier's failure to comply with an obligation under an implied warranty may sue for damages and other legal and equitable relief under 15 U.S.C. § 2310(d)(1) and may recover costs and reasonable attorney's fees under 15 U.S.C. § 2310(d)(2), and the amount in controversy on all claims in this suit exceeds $50,000, exclusive of interest and costs.

154. As a direct and proximate result of Parks's breach, Plaintiffs have suffered damages under Fla. Stat. §§ 672.714 and 672.715, including the difference between the value of the vehicle as accepted and its value as warranted, together with incidental and consequential damages.

155. Global Lending Services LLC is subject to this claim as holder, and Plaintiffs' affirmative recovery against it is limited to amounts paid under the contract.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages under Fla. Stat. §§ 672.714 and 672.715 and 15 U.S.C. § 2310(d)(1), including incidental and consequential damages in amounts to be determined at trial, together with all other legal and equitable relief available under 15 U.S.C. § 2310(d)(1), costs and reasonable attorney's fees under 15 U.S.C. § 2310(d)(2), pre-judgment and post-judgment interest, and such other and further relief as the Court deems just.

## COUNT IX
### Willful Impermissible Pull of Consumer Reports in Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681b(f) and 1681n (Against Parks Automotive Group, Inc.)

156. Plaintiffs reallege and incorporate paragraphs 3 through 10 and paragraphs 78 through 81 as if fully set forth herein.

157. The reports Parks obtained concerning Plaintiffs are consumer reports within the meaning of 15 U.S.C. § 1681a(d), in that they were prepared by consumer

reporting agencies, bore on Plaintiffs' credit worthiness, credit standing, and credit capacity, and were used or expected to be used in connection with credit transactions.

158. 15 U.S.C. § 1681b(f) provides that a person shall not use or obtain a consumer report for any purpose unless the report is obtained for a purpose for which the report is authorized to be furnished under that section, and the purpose is certified to the consumer reporting agency.

159. Parks obtained and used Plaintiffs' consumer reports on multiple occasions between December 2025 and February 2026 for the purpose of submitting credit applications on vehicles Plaintiffs had not agreed to purchase, at a time when Plaintiffs had no continuing credit transaction with Parks, without Plaintiffs' written instructions or authorization, and without any permissible purpose enumerated in 15 U.S.C. § 1681b(a).

160. Parks acted willfully within the meaning of 15 U.S.C. § 1681n, in that it knew the limited scope of the authorization Plaintiffs had given, knew that the transaction for which that authorization was given had closed and had been assigned, and obtained and used Plaintiffs' consumer reports anyway on repeated occasions over a period of months; and in the alternative Parks acted in reckless disregard of its obligations under 15 U.S.C. § 1681b(f), because its conduct ran an unjustifiably high risk of violating a statutory duty clear from the face of the statute.

161. As a direct and proximate result of Parks's willful conduct, Plaintiffs suffered actual damages, including the accumulation of numerous hard inquiries on their consumer reports, a reduction in credit score, a corresponding impairment of their ability to obtain credit and replacement financing on reasonable terms, and aggravation, inconvenience, loss of time, and emotional distress, the full measure of which is not presently ascertainable and will be established through discovery and proof at trial.

162. Plaintiffs are entitled, for each willful violation, to actual damages or to statutory damages in the amount provided by 15 U.S.C. § 1681n(a)(1)(A) at their election, to punitive damages in such amount as the Court may allow under 15 U.S.C. § 1681n(a)(2), and to costs and reasonable attorney's fees under 15 U.S.C. § 1681n(a)(3), and this action is timely under 15 U.S.C. § 1681p.

WHEREFORE, Plaintiffs demand judgment against Parks for actual damages in an amount to be determined at trial or, at Plaintiffs' election, statutory damages for each violation, together with punitive and exemplary damages in such amount as the Court may allow, costs and reasonable attorney's fees under 15 U.S.C. § 1681n(a)(3), pre-judgment and post-judgment interest, and such other and further relief as the Court deems just.

## COUNT X
**Negligent Impermissible Pull of Consumer Reports in Violation of the
Fair Credit Reporting Act, 15 U.S.C. §§ 1681b(f) and 1681o,
Pleaded in the Alternative to Count IX
(Against Parks Automotive Group, Inc.)**

163. Plaintiffs reallege and incorporate paragraphs 3 through 10 and paragraphs 78 through 81 as if fully set forth herein.

164. The reports Parks obtained concerning Plaintiffs are consumer reports within the meaning of 15 U.S.C. § 1681a(d), and 15 U.S.C. § 1681b(f) prohibits a person from using or obtaining a consumer report for any purpose other than a purpose for which the report is authorized to be furnished under that section.

165. Parks obtained and used Plaintiffs' consumer reports on multiple occasions between December 2025 and February 2026 without any permissible purpose enumerated in 15 U.S.C. § 1681b(a) and without Plaintiffs' authorization.

166. Parks was negligent in failing to comply with 15 U.S.C. § 1681b(f), in that it failed to maintain or follow reasonable procedures to confirm that it had a permissible purpose before obtaining or using a consumer report and failed to limit its use of Plaintiffs' consumer reports to the single transaction for which authorization had been given, and it knew or in the exercise of reasonable care should have known that the transaction for which Plaintiffs had authorized a credit inquiry had closed and had been assigned.

167. As a direct and proximate result of Parks's negligent conduct, Plaintiffs suffered actual damages, including the accumulation of numerous hard inquiries on their consumer reports, a reduction in credit score, a corresponding impairment of their ability to obtain credit and replacement financing on reasonable terms, and aggravation, inconvenience, loss of time, and emotional distress, the full measure of which is not presently ascertainable and will be established through discovery and proof at trial.

168. Plaintiffs are entitled to actual damages under 15 U.S.C. § 1681o(a)(1) and to costs and reasonable attorney's fees under 15 U.S.C. § 1681o(a)(2), and this action is timely under 15 U.S.C. § 1681p.

WHEREFORE, Plaintiffs demand judgment against Parks for actual damages in an amount to be determined at trial, costs and reasonable attorney's fees under 15 U.S.C. § 1681o(a)(2), pre-judgment and post-judgment interest, and such other and further relief as the Court deems just.

## COUNT XI
### Equitable Rescission
### (Against Parks Automotive Group, Inc., and against Global Lending Services LLC as holder)

169. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 27 through 77, and paragraphs 82 through 85 as if fully set forth herein.

170. This Count is pleaded in the alternative to Plaintiffs' claims for damages, and Plaintiffs will elect their remedy at or before the entry of judgment.

171. Plaintiffs and Parks entered into a contract for the sale and financing of the vehicle on December 6, 2025, which Parks procured by material misrepresentation and by concealment of material facts as alleged above.

172. The misrepresentations and concealment went to the essence of the bargain, because Ms. Ramskog contracted for a vehicle she could operate safely, at an advertised and quoted price of $14,000.00, on financing terms of 48 months at 15.09%, and received a vehicle that lacks the represented safety equipment, at a cash price of $16,995.00, on financing terms of 72 months at 23.81%, and Plaintiffs would not have entered into the contract had Parks disclosed the truth.

173. Plaintiffs promptly sought rescission, in that Ms. Ramskog contacted Parks's representative within minutes of leaving the dealership and demanded that Parks rescind the sale or exchange the vehicle, and Parks refused, ceased communicating, and withheld the contract documents for approximately two months.

174. Plaintiffs have not ratified the contract, and any continued possession or use of the vehicle has been reasonable and compelled by necessity, because Ms. Ramskog requires a vehicle for essential transportation and Parks refused to take the vehicle back or provide a conforming replacement.

175. Plaintiffs have no adequate remedy at law for the continuing obligation itself, because absent rescission and cancellation of the debt they remain bound to 72 monthly payments of $519.91 at 23.81% interest on a vehicle that cannot serve the purpose for which it was purchased, and they have at all times remained ready, willing, and able to return the vehicle upon refund of the amounts paid and arrangement for satisfaction of the lien, and hereby offer to do so.

176. Global Lending Services LLC is the holder of the contract and is subject to all claims and defenses Plaintiffs could assert against Parks, so that complete relief requires cancellation of the obligation it holds and release of its lien.

WHEREFORE, Plaintiffs demand judgment rescinding the December 6, 2025 retail installment sale contract, Buyer's Order, and service contract, declaring the obligation cancelled and of no further force or effect, requiring Global Lending Services LLC to release its lien on the vehicle, awarding Plaintiffs restitution of the down payment, all installment payments made, and all fees and charges paid, together with incidental, consequential, and special damages in amounts to be determined at trial, pre-judgment and post-judgment interest, costs, and such other and further relief as the Court deems just.

### COUNT XII
### Revocation of Acceptance Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), and Fla. Stat. § 672.608 (Against Parks Automotive Group, Inc., and against Global Lending Services LLC as holder)

177. Plaintiffs reallege and incorporate paragraphs 3 through 10, paragraphs 15 through 17, paragraphs 27 through 77, and paragraphs 82 through 85 as if fully set forth herein.

178. This Count is pleaded in the alternative to Plaintiffs' claims for damages, and Plaintiffs will elect their remedy at or before the entry of judgment.

179. The vehicle is a consumer product, Plaintiffs are consumers, and Parks is a supplier and warrantor within the meaning of 15 U.S.C. § 2301, and an implied warranty of fitness for a particular purpose arose under Fla. Stat. § 672.315 and constitutes an implied warranty within the meaning of 15 U.S.C. § 2301(7).

180. Any disclaimer of that warranty is ineffective under 15 U.S.C. § 2308(a)(2) and (c), because Parks entered into a service contract with Plaintiffs on the date of sale, and Parks failed to comply with its obligation under the warranty because the vehicle lacks the represented driver-assistance equipment.

181. 15 U.S.C. § 2310(d)(1) authorizes a consumer damaged by such a failure to sue for damages and for other legal and equitable relief, which includes revocation of acceptance measured by the remedies available under the law of the state in which

the transaction occurred, and Plaintiffs afforded Parks a reasonable opportunity to cure within the meaning of 15 U.S.C. § 2310(e), which Parks refused.

182. Fla. Stat. § 672.608(1) permits a buyer to revoke acceptance of goods whose nonconformity substantially impairs their value to the buyer, where acceptance occurred without discovery of the nonconformity and was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

183. The absence of the represented driver-assistance equipment substantially impairs the value of the vehicle to Plaintiffs, because the vehicle was purchased for the express and disclosed purpose of providing safe primary transportation for Ms. Ramskog and cannot serve that purpose. Plaintiffs accepted the vehicle without discovering the nonconformity, and their acceptance was reasonably induced both by the difficulty of discovery before acceptance, in that they were never permitted to see or drive the vehicle before signing and signed after the dealership had closed, and by Parks's assurances given in response to Ms. Ramskog's request for confirmation.

184. Fla. Stat. § 672.608(2) requires only that the buyer notify the seller of the revocation and does not require that the notice be given in writing. Plaintiffs revoked acceptance orally on December 6, 2025, within minutes of leaving the dealership, when Ms. Ramskog contacted Parks's representative and demanded that Parks

rescind the sale or exchange the vehicle, and they repeated that revocation orally on multiple occasions thereafter, by telephone, by email, and in person at the dealership.

185. The written notice served June 25, 2026 confirmed the revocation Plaintiffs had already communicated orally and did not create it, and Plaintiffs revoked acceptance within a reasonable time after they discovered the ground for revocation and before any substantial change in the condition of the vehicle not caused by its own defects.

186. Plaintiffs' continued use of the vehicle has been limited, reasonable, and compelled by necessity, because Ms. Ramskog requires a vehicle for essential transportation, Parks refused to take the vehicle back or provide a conforming replacement, and Parks withheld the contract documents for approximately two months.

187. Under Fla. Stat. § 672.608(3), upon revocation Plaintiffs have the same rights and duties with regard to the vehicle as if they had rejected it, and under Fla. Stat. §§ 672.711 and 672.715 they are entitled to recover so much of the price as has been paid, together with incidental and consequential damages.

188. Global Lending Services LLC is the holder of the contract and is subject to all claims and defenses Plaintiffs could assert against Parks, so that complete relief requires cancellation of the obligation it holds and release of its lien.

WHEREFORE, Plaintiffs demand judgment declaring Plaintiffs' revocation of acceptance effective, declaring the obligation cancelled and of no further force or effect, requiring Global Lending Services LLC to release its lien on the vehicle, awarding Plaintiffs so much of the price as has been paid, together with incidental, consequential, and special damages in amounts to be determined at trial, costs and reasonable attorney's fees under 15 U.S.C. § 2310(d)(2), pre-judgment and post-judgment interest, and such other and further relief as the Court deems just.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Angelique Camp Ramskog and Aidan Cotton respectfully request that this Court:

A.    Enter judgment in Plaintiffs' favor and against Defendants on all Counts.

B.    Declare Plaintiffs' revocation of acceptance effective under 15 U.S.C. § 2310(d)(1) and Fla. Stat. § 672.608, rescind the December 6, 2025 retail installment sale contract, Buyer's Order, and service contract, declare the obligation cancelled, order the return of the vehicle to Parks, and order Global Lending Services LLC to release its lien.

C.    Award Plaintiffs restitution of the down payment, all installment payments made, and all fees and charges paid, together with

disgorgement of all amounts by which Defendants have been unjustly enriched.

D.    In the alternative to rescission, award Plaintiffs actual and compensatory damages in an amount to be determined at trial, measured by the purchase price of the vehicle or by the difference between the value of the vehicle as represented and its value as delivered, together with the undisclosed package charge, the increase in the service contract charge, the tax and fee overcharge, and the finance charges attributable to each.

E.    Award Plaintiffs incidental, consequential, and special damages in amounts to be determined at trial, including lost wages, out-of-pocket expenses, transportation-related costs, loss of use, and loss of the benefit of the bargain.

F.    Award Plaintiffs punitive and exemplary damages under Fla. Stat. § 817.41(6), 15 U.S.C. § 1681n(a)(2), and Florida common law, in such amounts as the trier of fact may award.

G.    Award Plaintiffs statutory damages under 15 U.S.C. § 1640 and 15 U.S.C. § 1681n, in the maximum amounts permitted by law.

H.    Enter a declaratory judgment and permanent injunction as set forth in Count IV.

I.      Award Plaintiffs their reasonable attorney's fees and costs under Fla. Stat. §§ 501.2105 and 817.41(6), 15 U.S.C. § 1640(a)(3), 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), and 15 U.S.C. § 2310(d)(2).

J.      Award Plaintiffs nominal damages to the extent any claim is established without proof of a quantified loss.

K.      Award pre-judgment and post-judgment interest at the maximum lawful rate.

L.      Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

SUE YOUR DEALER, A LAW FIRM
4601 Sheridan Street, Suite 213
Hollywood, Florida 33021
Telephone: (954) 321-0507
Facsimile: (954) 697-0357

/s/ Joshua Feygin
Joshua Feygin, Esq.
Florida Bar No. 124685
josh@sueyourdealer.com

Counsel for Plaintiffs